IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MELISSA RAGO, INDIVIDUALLY AND D/B/A RAGO FABRICATION | § § § | |
| Plaintiff, | § § | CIVIL ACTION NO.: 5:17-cv-000854 |
| v. | § § | JURY TRIAL DEMANDED |
| CALI RAISED LED, A CALIFORNIA SOLE PROPRIETORSHIP, CALI RAISED OFFROAD, A CALIFORNIA SOLE PROPRIETORSHIP, HAMAR INDUSTRIES, A CALIFORNIA CORPORATION, BLAKE HAMAR, AN INDIVIDUAL | § § § § § § § § | |
| Defendants. | § | |

## COMPLAINT

Plaintiff Melissa Rago, individually and d/b/a Rago Fabrication ("Rago") complains against Defendants, Cali Raised LED, Hamar Industries, Inc., and Blake Hamar (collectively "Defendants") and allege as follows:

## I.      PARTIES

1.      Melissa Rago is an individual residing at 130 Black Buck Circle, Mountain Home, Texas 78058.

2.      Cali Raised LED is a California sole proprietorship owned and operated by Blake Hamar with its principal place of business in Santa Fe Springs, California.

3.      Cali Raised Offroad is a California sole proprietorship owned and operated by Blake Hamar with its principal place of business in Santa Fe Springs, California.

4.      Hamar Industries, Inc. is a California corporation owned and operated by Blake Hamar with a registered address of 8691 Hillcrest Road, Buena Park, California 90621.

5.      Blake Hamar is an individual and citizen of the state of California.

## II.      JURISDICTION AND VENUE

6.      This Complaint involves claims for patent infringement arising under the patent laws of the United States, Title 38, *United States Code*. This Complaint also involves claims for trademark infringement arising under the trademark laws of the United States, Title 15, *United States Code* and related claims of unfair competition and trade dress infringement in violation of the *Lanham Act*, 15 U.S.C. §1125, common law trademark infringement, common law trade dress infringement and common law unfair competition.  This Court has jurisdiction over these claims under 28 U.S.C. §§1331 and 1338. The Court also has supplemental jurisdiction over Plaintiff's state law claims, under 28 U.S.C. § 1367 because they arise out of the same matters and transactions alleged in this complaint.

7.      This Court has personal jurisdiction over Defendants because the Defendants have established minimum contacts with the forum, and the exercise of jurisdiction over the Defendants would not offend traditional notions of fair play and substantial justice. On information and belief, Defendants have conducted business, solicited customers, solicited dealers, and infringed Rago's patents, trademarks, and trade dress in the State of Texas.

8.      Venue is proper pursuant to 28 U.S.C. §1391(b)((2) and 1400(b) because a substantial part of the events giving rise to the claims herein occurred and continue to occur in this judicial district.

### III.   FACTS

9.      Rago Fabrication was founded in April of 2013 when Mario Rago retired from the Navy. Mario Rago decided to start fabricating metal products based on his experience as an automotive technologist and education from Toyota's Technician Training & Education Network program. He also received prior training in metal fabrication, welding, and Commuter Numerical Control ("CNC") operations.

10.      Shortly after, Rago started designing off-road accessories, such as rock sliders[1] and LED mounting brackets, for sell to different companies and the general public. Rago also offered product design services to companies. For example, Rago sold one of its designs to another company that was interested in producing the Rago rock-sliders under its own label.

11.      Rago's LED brackets and related products are distinct within the "off-roading" community. The success of these products is no accident. It was earned through Rago's substantial investment in design innovation, product development, and industry wide marketing and advertising. As a result, Rago has not only developed several popular products: Rago has developed tremendous goodwill. And Rago uses several trademarks for customers to associate that goodwill:

---

[1] Rock sliders are metal bars that run along each side of a vehicle, from just behind the front wheel to just before the rear wheel, and just below the level of the door sills. Rock sliders are affixed to the vehicle's chassis, and their function is to protect the door sills and door bottoms from damage when crossing large obstacles.

| Trademark | Application No. | Goods/Services |
|---|---|---|
| RAGO FABRICATION | U.S. App. No. 87446122 (filed May 11, 2017) | Metal aftermarket products for automobiles. LED Brackets, Rock Sliders, Bed Racks, Mounts, Overland and Offroad Accessory Mounting Solutions, Skid Plates, Overland and Off-road Accessories, Custom Fabrication and Design Services,Roof Racks, Metal Brackets and Mounts, Off-road and Overland products. |
|  | U.S. App. No. 87446113 (filed May 11, 2017) | Metal aftermarket products for automobiles. LED Brackets, Rock Sliders, Bed Racks, Mounts, Overland and Offroad Accessory Mounting Solutions, Skid Plates, Overland and Off-road Accessories, Custom Fabrication and Design Services,Roof Racks, Metal Brackets and Mounts, Off-road and Overland products. |
|  | U.S. App. No. 87446119 (filed May 11, 2017) | Metal aftermarket products for automobiles. LED Brackets, Rock Sliders, Bed Racks, Mounts, Overland and Offroad Accessory Mounting Solutions, Skid Plates, Overland and Off-road Accessories, Custom Fabrication and Design Services,Roof Racks, Metal Brackets and Mounts, Off-road and Overland products. |

12.     Rago's products have a new and inherently distinct look and design not seen before in the off road accessories product categories. The products have a smooth, sturdy design with rounded corners and orifices and smooth rounded transition lines. Each of the products is further characterized by an overall, low profile look, which has quickly become popular and

recognizable by the relevant customers. Rago claims trade dress protection in several of those products (collectively the "LED Bracket Trade Dress"). The LED Bracket Trade Dress includes the following:

a. 4Runner Hidden Bumper Bracket Trade Dress: 4Runner Hidden Bumper Bracket Trade Dress consists of three members having a common edge with each of the other members; a first, generally rectangular base member having two obround orifices just offset from one another throughout; a second member extending at an approximate 90 degree angle from the first member; the second member is a truncated triangle wherein two of the corners are rounded at the points of truncation; the second member is further characterized by a rounded, triangular orifice cutout from within; the third member extends from the first member at an approximate 90 degree angle; the third member is longer than the second member; the third member tapers inwardly along one edge (the edge opposite the edge joining the second and third members) to a position at or near the height of the second member; the third member tapers outwardly above the inward taper and comprises a thin obround orifice near the top edge of third member. The edges of transition between each member are smooth and curved with the exception of the edge between the first and second members which has a welded curve. This inherently distinct design has given Rago a smooth, sturdy, low profile design that is distinct and aesthetically pleasing to customers. A picture of the 4Runner Hidden Bumper Bracket Trade Dress (a pair of brackets) is attached hereto as Exhibit A.

b. 4Runner & Tundra Ditch Bracket Trade Dress: 4Runner & Tundra Ditch Bracket Trade Dress consists of four members each characterized as flat planar members; the

first member characterized as generally having a rounded "L" shape; the first member comprising two circular orifices—a first orifice at the distal end of the member and a second orifice at the central corner of the member—positioned in line with each other; the first member further comprising a thin orifice characterized as a rectangle with a circle positioned at one end of the rectangle, positioned close to the left, exterior edge of the shorter arm of the first member; the left, exterior edge of the shorter arm angled at approximately 15 degrees; the shorter arm of the first member connecting to a first end of the second member at approximately a 30 degree planar angle; the bend forming the transition between the first and second members comprising approximately 60% of the length of the shorter arm of the first member; the second member comprising a first and second segment and two orifices, and oriented approximately 20 degrees off center of the first member; the first segment resembling a parallelogram and with the first segment forming the connection with the first member; the second segment curving inwardly from the first member along the left exterior edge and having generally straight right exterior edge at an approximate 20–25 degree angle with the right exterior edge of the first segment; the approximate center line of the second segment angles approximately 20–25 degrees away from the first segment opposite the 15 degree angle described above; the second member comprising two thin orifices each characterized as a rectangle with a circle positioned at one end of the rectangle, and positioned close to the left exterior edge of the second member; the first of these two thin orifices is positioned in the first segment of the second member near the transition between the first and second members; the second of these two thin orifices is positioned near the transition

between the first and second segments of the second member; the third member is generally a parallelogram shape and extends from the leading edge of the second member at approximately a 50 degree planar angle; the third member, comprising a thin orifice characterized as a rectangle with a circle positioned at one end of the rectangle, positioned close to the left exterior edge of the third member, and near the transition between the second and third members; and the fourth member, characterized as a rounded, pentagonal shape and comprising a single obround orifice, connected to the third member at approximately a right angle; the bend forming the transition between the third and fourth members results in a bend along the upper left edge of the fourth member. The edges of transition between each member are smooth and curved. This inherently distinct design has given Rago a smooth, sturdy, low profile design that is distinct and aesthetically pleasing to customers. A picture of the 4Runner & Tundra Ditch Bracket Trade Dress (a pair of brackets) is attached hereto as Exhibit B.

c. 4Runner Relay Holder Trade Dress: 4Runner Relay Holder Trade Dress consists of three generally rectangular prongs positioned in a single plane; the first and second prong separated by a wide, "U" shaped cutout; the second and third prong separated by a similar, "U" shaped cutout; the three prongs each connect to a first rectangular member; the bend forming the transition between each of the three prongs and the first rectangular member is approximately a 35 degree angle   the first rectangular member connects to a second rectangular member, which is larger than the first member; the bend forming the transition between the first rectangular member and the second member is approximately a 35 degree angle but opposite the angle

between each of the three prongs to first member; the second member further characterized in part as having two semi-circle protrusions extending from the second member; each semi-circle protrusion contains a circular orifice; each circular orifice concentric with its respective semi-circle protrusion. The edges of transition between each member are smooth and curved. This inherently distinct design has given Rago a smooth, sturdy, low profile design that is distinct and aesthetically pleasing to customers. A picture of the 4Runner Relay Holder Trade Dress is attached hereto as Exhibit C.

d.  4Runner 52" Curved LED Bar Bracket Trade Dress: 4Runner 52" Curved LED Bar Bracket Trade Dress consists of five members forming a generally rounded triangular shape that is rounded at the top corner; the first member is generally rectangular with rounded edges; the first member comprises circular orifices that positioned equally off center of the first member; the transition between the first member and the second member is along the longest edge of the second member and is approximately a right angle; the second member generally a trapezoidal shape with a cutout from the upper half of the second member and the approximately middle 60–80% from left to right— the cutout forming the bottom portion of the third orifice described below; the transitions between the second member and the third and fourth members exist at opposite ends of the second member; the transition between the second member and the third and fourth members is a low profile, approximately 35 degree angle opposite the right angle between the first and second members; the third and fourth members are both generally parallelogram shapes oriented toward one another at their distal ends opposite the second member; the third and fourth members transitioning to the

fifth member at a first and a second segments of the fifth member, respectively; the transitions from the third and fourth members to the fifth member are approximately 55 degrees opposite the transition between the second member and the third and fourth members; the fifth member is a generally upside down "V" shape with a rounded corner; the first and second segments of the fifth member meet at a third segment generally circular shape—giving the rounded corner characteristic of the fifth member; the third segment comprising a circular, fourth orifice; the fourth orifice positioned below the center of the third segment; the result of the connections between the various members is the third orifice having a generally rounded triangular shape. The edges of transition between each member are smooth and curved. This inherently distinct design has given Rago a smooth, sturdy, low profile design that is distinct and aesthetically pleasing to customers. A picture of the 52" Curved LED Bar Bracket Trade Dress (a pair of brackets) is attached hereto as Exhibit D.

e.  Tacoma 3rd Gen Hidden Bumper Bracket Trade Dress: Tacoma 3rd Gen Hidden Bumper Bracket Trade Dress consists of four members in separate planes; the first member characterized as a rectangle with rounded corners; the first member comprising two obround orifices positioned in-line with one another and near the top and bottom edges of the first member; a bend forming the transition between the first member and the second member is an approximate right angle along one of the long edges of the first member; the second member characterized is generally an acute trapezoid shape; the second member having rounded corners and smooth edges; the bend forming the transition between the second member and the third member is

approximately a 40 degree angle; t the bend forming the transition between the third member and the fourth member is approximately a 50 degree angle and opposite the angle between the second and third members; the fourth member resembles a lowercase "r" comprising an obround orifice positioned at the distal end of the fourth member; the fourth member having smooth, rounded corners and edges. The edges of transition between each member are smooth and curved. This inherently distinct design has given Rago a smooth, sturdy, low profile design that is distinct and aesthetically pleasing to customers. A picture of the Tacoma 3rd Gen Hidden Bumper Bracket Trade Dress (a pair of brackets) is attached hereto as Exhibit E.

f.   Tacoma 3rd Gen Ditch Bracket Trade Dress: Tacoma 3rd Gen Ditch Bracket Trade Dress consists of three members each characterized as flat planar members; the first member comprising three segments of approximately equal length and width and having generally parallel edges; the first segment having a smooth curved distal end and two circular orifices; the second segment extends from the first segment at an approximately 10 degree angle; the second segment comprising a thin orifice characterized as a rectangle with a circle on one end of the rectangle, positioned near the left exterior edge of the segment and centered approximately equally between the first and third segments; the transition between the third segment and the second segment is an approximately 25 degree angle and having a leading edge at approximately a 10 degree angle with the left and right exterior edges of that segment; the 25 degree angle between the second and third segment is opposite the angle between the first and second segments; the third segment comprises a thin orifice characterized as a rectangle with a circle on one end of the rectangle,

positioned near the left exterior edge of the segment, and centered approximately equally between the second segment and second member; the second member is generally a parallelogram shape and returns from the leading edge of the first member at approximately a right angle;   the second member comprises a thin orifice characterized as a rectangle with a circle on one end of the rectangle, positioned near the left exterior edge of the second member and close to the leading edge; the third member, characterized as a rounded, pentagonal shape comprises a single obround orifice, connected to the second member at approximately a right angle; the bend forming the transition between the second and third members results in a bend along the upper left edge of the third member. The thickness of the 4Runner Ditch Bracket Trade Dress gives a durable look. The edges of transition between each member are smooth and curved. This inherently distinct design has given Rago a smooth, sturdy, low profile design that is distinct and aesthetically pleasing to customers. A picture of the Tacoma 3rd Gen Ditch Bracket Trade Dress (a pair of brackets) is attached hereto as Exhibit F.

g.  Tacoma 3rd Gen 52" Curved LED Bar Bracket Trade Dress: Tacoma 3rd Gen 52" Curved LED Bar Bracket Trade Dress: Tacoma 3rd Gen 52" Curved LED Bar Bracket Trade Dress consists of three members forming a generally right triangular shape that is rounded at its corners; the bracket further comprising nine orifices; the first member is generally rectangular with rounded edges; the first member comprises seven circular orifices equally positioned along a single axis of the first member; the transition between the first member and the second member is along the longest edge of the second member and is approximately a 95 degree angle; the second member is

generally a truncated right triangle and comprises a total of three segments; the second segment is a vertical, rectangular shape adjacent the first segment; the third segment forms the hypotenuse of the truncated right triangle; the second and third segments of the second member transition to the first and second segments of the third member, respectively, at low profile, 45 degree angles opposite the 95 degree angle between the first and second members; the first segment of the third member is rectangular and the second segment of the third member is trapezoidal; the third member having a generally upside down "V" shape with a rounded corner; the first and second segments of the third member meet at a third segment generally characterized as a circle—giving the rounded corner characteristic of the third member; the third segment comprising a circular, ninth orifice; the ninth orifice is concentric with the third segment of the third member; the result of the transitions between the various members is an orifice having a truncated, generally rounded triangular shape. The edges of transition between each member are smooth and curved. This inherently distinct design has given Rago a smooth, sturdy, low profile design that is distinct and aesthetically pleasing to customers. A picture of the Tacoma 3rd Gen 52" Curved LED Bar Bracket Trade Dress (a pair of brackets) is attached hereto as Exhibit G.

h.  **Tacoma Relay Holder Trade Dress:** Tacoma Relay Holder Trade Dress consists of three generally rectangular prongs positioned in a single plane; the first and second prong separated by a wide, "U" shaped cutout; the second and third prong separated by a similar, "U" shaped cutout; the three prongs each connect to a first rectangular member; the bend forming the transition between each of the three prongs and the

first rectangular member is approximately a 35 degree angle; the first member connects to a second rectangular member, which is larger than the first member; the bend forming the transition between the first rectangular member and the second member is approximately a 35 degree angle but opposite the angle between each of the three prongs to first member; the second member further characterized in part as having two semi-circle edges protruding from the second member; each semi-circle protrusion contains a circular orifice concentric with its respective semi-circle protrusion. The edges of transition between each member are smooth and curved. This inherently distinct design has given Rago a smooth, sturdy, low profile design that is distinct and aesthetically pleasing to customers.  A picture of the Tacoma Relay Holder Trade Dress is attached hereto as Exhibit H.

i. Tacoma 3rd Gen Rocker Switch Panel Trade Dress: Tacoma 3rd Gen Rocker Switch Panel Trade Dress consists of a rectangular plate with rounded corners and seven orifices; three of the seven orifices are rounded rectangles positioned adjacent to each other and oriented vertically; the three rectangular orifices are, separated by strips of metal, and collectively circumscribed by metal forming the perimeter of the Tacoma 3rd Gen Rocker Switch Panel Trade Dress; the remaining four orifices are circles positioned near the four corners of the Tacoma 3rd Gen Rocker Switch Panel Trade Dress. This inherently distinct design has given Rago a smooth, sturdy, low profile design that is distinct and aesthetically pleasing to customers. A picture of the Tacoma 3rd Gen Rocker Switch Panel Trade Dress is attached hereto as Exhibit I.

j. Tacoma 2nd Gen Hidden Bumper Bracket Trade Dress: Tacoma 2nd Gen Hidden Bumper Bracket Trade Dress consists of four members in separate planes; the first

member characterized as a rectangle with rounded corners; the first member comprising two obround orifices positioned in-line with one another and near the top and bottom edges of the first member; a bend forming the transition between the first member and the second member is an approximate right angle along one of the long edges of the first member; the second member characterized is generally an acute trapezoid shape; the second member having rounded corners and smooth edges; the bend forming the transition between the second member and the third member cis approximately a 40 degree angle; the bend forming the transition between the third member and the fourth member is approximately a 50 degree angle and opposite the angle between the second and third members; the fourth member resembles a lowercase "r" comprising an obround orifice positioned at the distal end of the fourth member; the fourth member having smooth, rounded corners and edges. The edges of transition between each member are smooth and curved. This inherently distinct design has given Rago a smooth, sturdy, low profile design that is distinct and aesthetically pleasing to customers. A picture of the Tacoma 2nd Gen Hidden Bumper Bracket Trade Dress is attached hereto as Exhibit J.

k.  Tacoma 2nd Gen 52" Curved LED Bar Bracket Trade Dress: Tacoma 2nd Gen 52" Curved LED Bar Bracket Trade Dress consists of three members forming a generally right triangular shape that is rounded at its corners; the bracket further comprising four orifices; the first member is generally rectangular with rounded edges; the first member comprises two circular orifices positioned equally off center of the first member; the transition between the first member  and the second member is along the longest edge of the second member and is approximately a 95 degree angle; the

second member is generally a truncated right triangle and comprises a total of three segments; the second segment is a vertical, rectangular shape adjacent the first segment; the third segment forms the hypotenuse of the truncated right triangle; the second and third segments of the second member transition to the first and second segments of the third member, respectively, at low profile, 45 degree angles opposite the 95 degree angle between the first and second members; the first segment of the third member is rectangular and the second segment of the third member is trapezoidal; the third member having a generally upside down "V" shape with a rounded corner; the first and second segments of the third member meet at a third segment generally characterized as a circle—giving the rounded corner characteristic of the third member; the third segment comprising a circular, third orifice; the third orifice concentric with the third segment; the result of the connections between the various members is the orifice having a truncated, generally rounded triangular shape. The edges of transition between each member are smooth and curved. This inherently distinct design has given Rago a smooth, sturdy, low profile design that is distinct and aesthetically pleasing to customers. A picture of the Tacoma 2nd Gen 52" Curved LED Bar Bracket Trade Dress (a pair of brackets) is attached hereto as Exhibit K.

l.  Tundra 52" Curved LED Bar Bracket Trade Dress: Tundra 52" Curved LED Bar Bracket Trade Dress consists of four members forming a rounded, right triangular shape; the first member is generally rectangular with rounded edges; the first member comprises circular orifices positioned equally off center of the first member; the transition between the first member and the second member is along the longest edge of the second member and is approximately a right angle; the second member is

generally characterized as a trapezoid with a cutout from the upper half of the second member and the middle 60–80% from left to right—the cutout forming the bottom portion of the third orifice described below; the transitions between the second member and the the third member exists at opposite ends of the second member—to first and second segments of the third member; the transition between the second member and the first segment and second segments of the third member is approximately a 30 degree angle; the transition between the second member and the first and second segments of the third member collectively tapers from  at a 6.5 degree pitch to achieve a low profile look; the first segment of the third member is rectangular and connects to the second member at a higher position along the pitch; the second segment of the third member is a parallelogram and connects to the second member at a lower position along the pitch; the first and second segments of the third member connect to a generally rectangular, horizontal third segment of the third member; the transition between the third member and the fourth member exists along the upper edge of the third segment; the transition between the third member and the fourth member is an approximately 60 degree angle opposite the 30 degree angle between the second and third members; the fourth member is a rounded trapezoid shape; the fourth member comprises a circular orifice positioned above the center of the fourth member; the result of the connections between the various members is a fourth orifice having a generally rounded, truncated right triangular shape. The edges of transition between each member are smooth and curved. This inherently distinct design has given Rago a smooth, sturdy, low profile design that is distinct and

aesthetically pleasing to customers. A picture of the Tundra 52" Curved LED Bar Bracket Trade Dress (a pair of brackets) is attached hereto as Exhibit L.

m. Ditch Bracket Extension Trade Dress: The Ditch Bracket Extension Trade Dress consists of a rectangular plate with rounded corners and two obround orifices inline and positioned at opposite ends of the plate. This inherently distinct design has given Rago a smooth, sturdy, low profile design that is distinct and aesthetically pleasing to customers. A picture of the Ditch Bracket Extension Trade Dress (a pair of brackets) is attached hereto as Exhibit M.

13.     Several products included within the LED Bracket Trade Dress described above are sold in corresponding pairs (i.e., left and right pieces). Additionally, several of the products included within the LED Bracket Trade Dress incorporate the stylized trademark R depicted in U.S. App. No. 87/446,119.

14.     Rago first began marketing and selling the LED Bracket Trade Dress in 2015. Since then, Rago has spent significant amounts of resources developing, marketing and promoting the LED Bracket Trade Dress, and these products are now sold across the United States and beyond to countless members of the Off Roading Community.

15.     As a result of the distinctive design of Rago's LED Bracket Trade Dress, the success of the products and Rago's extensive marketing and promotion of the same, the LED Bracket Trade Dress has acquired substantial recognition among the consuming public and the consuming public associates these distinctive designs with Rago and their products and services.

16.     Rago has established an excellent reputation as to the quality of its goods and services. The inherently distinctive design of the LED Bracket Trade Dress is recognized by members of the consuming public as indicators of high quality products associated with Rago.

17.      In 2015, Blake Hamar contacted Rago on the social media platform, Instagram, to see if Rago would consider designing and making custom LED brackets. Blake, the son of a successful flooring entrepreneur, had recently started his own business: Cali Raised LED. Blake explained that his company sells a variety of off-roading accessories but specializes in all things LED. At the time, Blake was looking for someone to fabricate vehicle specific metal brackets as there was a gap in the industry space. Blake/Cali ("Defendants") appreciated Rago's work and was ready to start selling their products. The parties reached an oral agreement wherein Rago would sell its brackets either directly to customers through its website or distribute exclusively through Defendants. In return, Defendants would only sell LED brackets manufactured by Rago. Over the course of a year, the arrangement went smoothly. In fact, Defendants' business grew alongside Rago's business. Rago designed and manufactured the LED Bracket Trade Dress and Defendants would sell the products to resellers and consumers directly.

18.      During that time, Defendants established a reseller network for Rago's brackets and developed its relationships with the resellers by selling them Rago designed products.

19.      In June of 2016, however, Defendants started working with another LED mount manufacturer. Surprised by the apparent breach, Rago contacted Defendants hoping for a reasonable explanation. When Defendants responded flippantly, the relationship strained, and Defendants altogether stopped ordering brackets from Rago.

20.      In August of 2016, a customer contacted Rago stating that CaliRaised had duplicated their product line. Some of the products contained Rago's signature "R" while others did not. Printouts from Defendants' website depicting Defendants' infringing products are attached hereto as Exhibit N.

21.     In addition to continuing to sell Rago's products, Defendants continued to promote their brackets by suggesting an association with Rago. By example, Defendants have posted numerous photos and videos online with products bearing one or more of Rago's trademarks.[2] These posts misrepresent the source of these brackets and mislead consumers into believing either an affiliation exists between Rago and the Defendants, or that Defendants and Rago are one in the same.

22.     Wanting to right this wrong, Rago went to social media and attempted to clarify any confusion. Shortly after that, Rago received a cease and desist letter from Defendants, and ultimately a civil complaint. The Defendants sued Rago for defamation and related torts. The parties settled. Despite the settlement, Defendants continue to sell brackets that infringe on Rago's intellectual property (e.g., design patents and trade dress) and continue to promote their products using Rago's trademarks. This infringing conduct includes:

- Defendants' manufacture, distribution, and sell brackets that are nearly identical to the Rago's patented bracket designs: Design Patent Nos. D784,113 (the "'D113 patent"),[3] D784,114 (the "'D114 patent"),[4] D784,115 (the "'D115 patent"),[5] D787,918 (the "'D918 patent"),[6] and D796,938 (the "'D938 patent");[7]

- Defendants' manufacture, distribution, and sell brackets that are nearly identical to the LED Bracket Trade Dress;

- Defendants sells products bearing the Rago Marks;

---

[2] Ex. O: pictures Defendants' have posted with products bearing Rago's signature "R."
[3] Ex. P: D784,113.
[4] Ex. Q: D784,114.
[5] Ex. R: D784,115.
[6] Ex. S: D787,918.
[7] Rago received an Issue Notification from the USPTO indicating that U.S Design Pat. App. No. 29/593,877 will issue as Design Patent No. D796,938 on September 12, 2017.

- Defendants use pictures of Rago products to sell Defendants' brackets;

- Defendants have a YouTube channel with videos wherein Defendants use Rago brackets to perform the installations and in several instances Defendants mention Rago.

23.     This infringing behavior causes significant harm to Rago. For instance, Rago has not been able to sell its products to or through the network of resellers established by Defendants. Specifically, Defendants established the relationships with the resellers by relying on the popularity of Rago's products. Defendants maintain those relationships by continuing to sell products identical to Rago's products. As a result, the resellers believe Defendants are Rago. And Rago has not been able to overcome the resulting confusion.

24.     Additionally, Defendants' use of the Rago brackets and marks causes actual confusion with customers. The actual confusion is demonstrated by:

- Customers purchasing Defendants' products under the mistaken belief that they are purchasing Rago products;[8]

- Customers contacting Rago by telephone and asking for Defendants or looking to purchase Defendants' products;[9]

- Customers contacting Rago by email and asking for Defendants or looking to purchase Defendants' products;[10]

- Customers posting comments or other messages on Rago or Defendants' social media sites with the mistaken belief that there is an association between the two.[11]

---

[8] Ex. T: Declaration of Melissa Rago at ¶10; Ex. U: screenshots of comments by disappointed customers.
[9] Ex. T at ¶11.
[10] Ex. T at ¶12.
[11] Ex. T at ¶11.

Such actual confusion is harmful to Rago. Because Rago cannot exercise control over the quality of Defendants goods or services, Rago is at significant risk of harm to its reputation. Such risk of harm is irreparable.

## IV.    CAUSES OF ACTION

### COUNT 1
### PATENT INFRINGEMENT

25.    Each of the preceding paragraphs is incorporated by reference under this count.

26.    On April 18, 2017, the U.S. Patent & Trademark Office issued U.S. Patent No. Des. 784,113 (hereinafter the " '113 patent") to Mario Rago.

27.    On April 18, 2017, the U.S. Patent & Trademark Office issued U.S. Patent No. Des. 784,114 (hereinafter the " '114 patent") to Mario Rago.

28.    On April 18, 2017, the U.S. Patent & Trademark Office issued U.S. Patent No. Des. 784,115 (hereinafter the " '115 patent") to Mario Rago.

29.    On May 30, 2017, the U.S. Patent & Trademark Office issued U.S. Patent No. Des. 787,918 (hereinafter the " '918 patent") to Mario Rago.

30.    On September 12, 2017, the U.S. Patent & Trademark Office will issue U.S. Patent No. Des. 796,938 (hereinafter the " '938 patent") to Mario Rago.

31.    Mario Rago previously assigned his ownership interest in the '113 patent, the '114 patent, the '115 patent, the '918 patent, and the '938 patent to Melissa Rago.

32.    Within this and other judicial districts, for a period not yet determined, but continuing to this date, Defendants have imported, made, offered for sale, or sold products which have substantially the same design as and infringe the patented design in the '113 patent, the '114 patent, the '115 patent, the '918 patent, and the '938 patent.

33.     Within this and other judicial districts, for a period not yet determined, but continuing to this date, Defendants have induced and contributed to the infringement of the '113 patent, the '114 patent, the '115 patent, the '918 patent, and the '938 patent, by others.

34.     Rago is informed and believes, and on that basis, alleges that Defendants will continue to infringe, induce infringement, and contribute to infringement of the '113 patent, the '114 patent, the '115 patent, the '918 patent, and the '938 patent unless enjoined by this Court.  Pursuant to 35 U.S.C. §283, Rago seeks a preliminary and permanent injunction against further infringement of the '113 patent, the '114 patent, the '115 patent, the '918 patent, and the '938 patent.

35.     Defendants' infringement of the '113 patent, the '114 patent, the '115 patent, the '918 patent, and the '938 patent has caused great harm and damage to Rago.  The amount of these damages is not yet determined.  Pursuant to 35 U.S.C. §284, Rago seeks damages adequate to compensate for Defendants' infringement, in an amount equal to Rago's lost profits, or in the alternative, a reasonable royalty, together with interest and costs and such additional and further relief which may deemed appropriate and awarded by the Court.

36.     Rago is informed and believes, and on that basis alleges that Defendants' infringement of the '113 patent, the '114 patent, the '115 patent, the '918 patent, and the '938 patent has been, and continues to be, deliberate and willful.  Pursuant to 35 U.S.C. §285, Rago is entitled to and seeks a finding that this case is exceptional and warrants an award of enhanced damages, including reasonable attorneys' fees.

## COUNT 2
## FEDERAL TRADE DRESS INFRINGEMENT AND UNFAIR COMPETITION

37.     Each of the preceding paragraphs is incorporated by reference under this count.

38.     Rago is the owner of all rights and title to the LED Bracket Trade Dress.

39.     Rago's LED Bracket Trade Dress designs are entitled to protection because each design is inherently distinctive and not functional and/or it has acquired distinctiveness.

40.     By the aforesaid acts, Defendants have infringed on Rago's LED Bracket Trade Dress and committed unfair competition in violation of § 32 of the Lanham Act, 15 U.S.C. § 1125(a).

41.     Defendants' acts have been willful and in conscious disregard of the trade dress rights of Rago.

42.     Rago has suffered, is suffering, and will continue to suffer irreparable injury for which Rago has no adequate remedy at law.

43.     Rago is entitled to a preliminary and permanent injunction preventing Defendants' further infringement.

44.     As a result of Defendants' actions, Defendants are realizing a profit and will continue to realize a profit from their unlawful actions. Defendants' unlawful actions are causing and will cause Rago monetary damages. The amount of these damages is not yet determined.  Pursuant to 15 U.S.C. §1117(a), Rago is entitled to and seeks Defendants' profits, actual damages, and costs of this action and such additional relief as may be deemed appropriate and awarded by this Court.

45.     On information and belief, Defendants' acts of trade dress infringement and unfair competition have been and continue to be deliberate and willful and warrant an award of enhanced damages. In addition, Rago is entitled to and seeks a finding that this case is exceptional and warrants an award of attorneys' fees pursuant to 15 U.S.C. §1117(a).

## COUNT 3
## COMMON LAW TRADE DRESS INFRINGEMENT AND UNFAIR COMPETITION

46.     Each of the preceding paragraphs is incorporated by reference under this count.

47.     Defendants' aforesaid conduct has and is likely to confuse, mislead or deceive purchasers or potential purchasers and constitutes trade dress infringement and/or unfair competition under the laws of the State of Texas.

48.     Defendants' acts of common law unfair competition have resulted in profits to Defendants and caused great harm and damage to Rago. The amount of these damages is not yet determined. Rago seeks actual damages, exemplary damages, and such additional relief as may be deemed appropriate and awarded by this Court.

49.     Based upon information and belief, Defendants will continue their willful acts of unfair competition unless enjoined by this Court. Rago seeks a preliminary and permanent injunction against further acts of trade dress infringement and/or unfair competition by Defendants.

### COUNT 4
### VIOLATION OF THE LANHAM ACT – UNFAIR COMPETITION

50.     Each of the preceding paragraphs is incorporated by reference under this count.

51.     Defendants own, manage, and market a variety of their products under the Rago Marks.

52.     The acts of the Defendants complained of herein above are likely to cause confusion, or to cause mistake, or to deceive as to the (1) affiliation, connection or association of Defendants with Rago or (2) as to the origin, sponsorship or approval of Defendants goods by Rago.

53.     The uses by the Defendants as complained of herein above constitute false or misleading descriptions and/or representations of fact which are likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Defendants' goods with Rago goods in violation of the Lanham Act, 15 U.S.C. §1125 (a)(1)(A) and constitute unfair competition.

54.     Defendants' acts described herein further constitute false or misleading descriptions and/or representations of fact which, in commercial advertising or promotion, misrepresent the

nature, characteristics, and qualities of its goods in violation of the Lanham Act, 15 U.S.C. §1125 (a)(1)(B) and constitute unfair competition.

55.     Defendants' acts described herein further constitute a bad faith intent to profit from the Rago Marks in violation of the Lanham Act, 15 U.S.C. §1125(d)(1)(A) and constitute unfair competition.

56.     Defendants' acts have and will continue to cause Rago irreparable injury and based upon information and belief, Defendants will continue their acts of unfair competition unless enjoined by this Court. Pursuant to 15 U.S.C. §1116, Rago seeks both preliminary and permanent injunctive relief against further acts of unfair competition by Defendants.

57.     Defendants' acts of unfair competition and false designation of origin have caused great harm and damage to Rago. The amount of these damages is not yet determined.  Pursuant to 15 U.S.C. §1117(a), Rago is entitled to and seeks Defendants' profits, actual damages, and costs of this action and such additional relief as may be deemed appropriate and awarded by this Court.

58.     On information and belief, Defendants' acts of unfair competition and false designation of origin have been and continue to be deliberate and willful and warrant an award of enhanced damages.  In addition, Rago is entitled to and seeks a finding that this case is exceptional and warrants an award of attorneys' fees pursuant to 15 U.S.C. §1117(a).

<u>**COUNT 5**</u>
<u>**COMMON LAW TRADEMARK INFRINGEMENT**</u>

59.     Each of the preceding paragraphs is incorporated by reference under this count.

60.     Rago enjoys common law trademark rights under the common law of the State of Texas in connection with its service marks and trademarks to identify, in the State of Texas and throughout the United States, its goods and services.

61.     Defendants' past and current use of the Rago Marks constitutes trademark infringement

under the laws of the State of Texas.

62.     The offering by Defendants of their services using confusingly similar marks is likely to cause and has caused confusion as to the source of origin of the services in that purchasers of Rago's goods are likely to associate or have associated such services as originating with Defendants, all to the detriment of and resulting in damages to Rago.

63.     Defendants' acts of common law trademark infringement have caused great harm and damage to Rago.  The amount of these damages is not yet determined.  Rago seeks actual damages, exemplary damages, and such additional relief as may be deemed appropriate and awarded by this Court.

64.     Defendants' acts have and will continue to cause Rago irreparable injury and based upon information and belief, Defendants will continue their willful acts of trademark infringement unless enjoined by this Court.  Rago seeks both preliminary and permanent injunctive relief against further acts of trademark infringement by Defendants.

## COUNT 6
## COMMON LAW UNFAIR COMPETITION

65.     Each of the preceding paragraphs is incorporated by reference under this count.

66.     Defendants' conduct has and is likely to confuse, or deceive purchasers or potential purchasers and constitutes unfair competition under the laws of the State of Texas. Namely, Defendants' continued use of the Rago Marks in Defendants' advertising, product packaging, public relations, etc. falsely creates the impression that an association exists between Rago and the Defendants.

67.     Defendants' acts of common law unfair competition have caused great harm and damage to Rago.  The amount of these damages is not yet determined.  **Rago** seeks actual damages,

exemplary damages, and such additional relief as may be deemed appropriate and awarded by this Court.

68.    Defendants' acts have and will continue to cause Rago irreparable injury and based on information and belief, Defendants will continue their willful acts of unfair competition unless enjoined by this Court.  Rago seeks both preliminary and permanent injunctive relief against further acts of unfair competition by Defendants.

## COUNT 7
## UNJUST ENRICHMENT

69.    Each of the preceding paragraphs is incorporated by reference under this count.

70.    By wrongfully misappropriating the goodwill Rago has developed in its LED Bracket Trade Dress through Defendants' use of the LED Bracket Trade Dress and Rago Marks, Defendants have been unjustly enriched to the material detriment of Rago.

71.    Defendants' actions have caused, and will continue to cause, irreparable harm to Rago unless preliminary and permanently enjoined.

72.    Defendants' acts have resulted in profits to and caused great harm and damage to Rago. The amount of these damages is not yet determined.

73.    Rago seeks actual damages, exemplary damages and such additional relief as may be deemed appropriate and awarded by the Court.

74.    Additionally, Rago asks the Court to require a constructive trust be placed on all of Defendants' property, including funds withdrawn or distributed, currently in the possession of Defendants, and Defendants should be required to disgorge all ill-gotten gains.

### DEMAND FOR JURY TRIAL

Rago demands trial by jury on all issues so triable.

## **PRAYER FOR RELIEF**

WHEREFORE, Rago prays that the Court enter a judgment against Defendants granting Plaintiff the following relief:

1.      Finding Defendants and their officers, agents, servants, affiliates, employees, attorneys and representatives and all those in privy or active concert with Defendants, or on behalf of Defendants:

    a.   have infringed the '113 patent, the '114 patent, the '115 patent, the '918 patent, and the '938 patent;

    b.   have induced infringement of the '113 patent, the '114 patent, the '115 patent, the '918 patent, and the '938 patent by others;

    c.   have contributed to the infringement of the '113 patent, the '114 patent, the '115 patent, the '918 patent, and the '938 patent by others;

    d.   have infringed LED Bracket Trade Dress; and

    e.   have infringed the Rago Marks;

2.      Defendants and their officers, agents, servants, affiliates, employees, attorneys and representatives and all those in privy or active concert with Defendants, or on behalf of Defendants, be preliminarily and permanently enjoined and restrained from, directly or indirectly:

    a.   applying the patented designs of D'113, D'114, D'115 D'918, or D'938, or any colorable imitation thereof, to any article of manufacture for the purpose of sale; or

    b.   selling or exposing for sale any article of manufacture to which such designs or colorable imitation have been applied.

      c.       Using any of the LED Bracket Trade Dress, Rago Marks or any other names or marks confusingly similar thereto.

      d.       Creating any confusion with Plaintiff's LED Bracket Trade Dress or Rago Marks;

      e.       Advertising with the LED Bracket Trade Dress or Rago Marks;

      f.       Causing confusion or the likelihood of confusion, mistake or deception between Plaintiff and Defendants;

      g.       Engaging in unfair competition that is likely to confuse or deceive purchasers or potential purchasers; and

      h.       Otherwise unfairly competing with Plaintiff in any manner;

3.      Ordering Defendants to pay Plaintiff any damages suffered by Plaintiff as a result of Defendants' conduct described herein;

4.      Ordering Defendants to pay Plaintiff Defendants' profits arising from the infringing products and marks;

5.      Requiring a constructive trust be placed on all of Defendants' property, including funds withdrawn or distributed, currently in the possession of Defendants, and Defendants should be required to disgorge all ill-gotten gains.

6.      Awarding Plaintiff prejudgment and postjudgment interest.

7.      Awarding Plaintiff enhanced damages, attorneys' fees, and costs of court as the result of Defendants' acts of infringement and unfair competition that were deliberate and willful, and because this is an exceptional case; and

8.      Awarding Plaintiff such other relief as the Court deems proper.

Respectfully submitted,


GUNN, LEE & CAVE, P.C.
300 Convent St., Suite 1080
San Antonio, Texas 78205
Tel:  (210) 886-9500
Fax:  (210) 886-9883


/s/ Nick Guinn
John C. Cave
Texas State Bar No. 00783812
john.cave@gunn-lee.com
Nick Guinn
Texas State Bar No. 24087642
nguinn@gunn-lee.com

ATTORNEYS FOR PLAINTIFF